**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

ROHAN SKERVIN

                        Petitioner,

       v.                                         No. 07-CV-240
                                                        (NAM/DRH)

H. D. GRAHAM , Superintendent,
Auburn Correctional Facility,

                        Respondent.
-----------------------------------------------------------------

**APPEARANCES:**                          **OF COUNSEL:**

ROHAN SKERVIN
Petitioner Pro Se
No. 01-A-4414
Elmira Correctional Facility
Post Office Box 500
Elmira, New York 14902


HON. ANDREW M. CUOMO            ASHLEY N. DANNELLY, ESQ.
Attorney General for the State           JODI A. DANZIG, ESQ.
   of New York                            Assistant Attorneys General
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

      Petitioner pro se Rohan Skervin ("Skervin") is currently an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at Elmira Correctional Facility.  On December 8, 1998, a jury in Albany County convicted Skervin of murder and criminal possession of a weapon.  On January 22, 1999, Skervin was sentenced to a total indeterminate term of imprisonment of twenty-five years to life.  Skervin now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that:

1) He was denied a fair trial because the trial court allowed the prosecutor to exercise a peremptory challenge in violation of Batson v. Kentucky, 476 U.S. 79 (1986);

2) Appellate counsel on Skervin's direct appeal was ineffective for failing to a) assert an ineffective assistance of counsel claim based on trial counsel's failure to "fashion a complete record to determine why the prosecutor's peremptory challenge was pretextual," and b) raise "significant and obvious issues"; and

3) The prosecutor committed prosecutorial misconduct by making an improper remark during summation.

For the reasons that follow, it is recommended that the petition be denied.

## I. Background

At 11:15 a.m. on September 22, 1997, Milton Sutherland telephoned Skervin's girlfriend, Erica Robinson stating that "there was an emergency" and that Skervin was at his apartment. T. 138–40, 172.[1] During the call, Robinson heard Skervin in the background and spoke to him directly. T. 138–40. At or approximately 12:00 p.m., Skervin was observed leaving Sutherland's apartment with a black handgun in his right hand. T. 273–75, 277–78. At 12:45 p.m., Sutherland was found dead in his kitchen. T. 250, 253–54. An autopsy showed that Sutherland had been shot twice, once in the head and the other in the torso. The shot to the head caused his death. T. 435–39, 442. The Albany police discovered a spent projectile under Sutherland's head and another spent shell casing nearby. T. 463–64.

Two days later on September 24, 1997, Skervin gave a gun to his friend, Leroy Wellington, and admitted to Wellington that he had killed Sutherland. T. 348–51, 354.

---

[1] "T." followed by a number refers to the pages of the trial transcript. Docket No. 15.

Ballistic tests showed that the projectile recovered by the Albany police was fired from that gun but that the shell casing had not been discharged from the gun. T. 351–52, 394–95, 463–68, 537–43. After his arrest, Skervin told the police that on the morning of the shooting, he was in Sutherland's apartment, he was angry with Sutherland, and they had argued. T. 563–64. However, Skervin did not admit to shooting Sutherland. T. 564.

Skervin was found guilty and was sentenced as indicated above. On direct appeal, Skervin's conviction and sentence were affirmed by the Appellate Division on December 2, 2004. People v. Skervin, 13 A.D.3d 661 (3d Dep't 2004). Leave to appeal was denied by the New York Court of Appeals. See People v. Skervin, 5 N.Y.3d 833 (2005). Skervin's motion for a *writ of error coram nobis* was denied and the New York Court of Appeals denied leave to appeal. People v. Skervin, 9 N.Y.3d 1039 (2008). This action followed.

## II. Discussion[2]

### 1. Batson Claim

During jury selection, the prosecution used a peremptory challenge against Juror No. 3, a nineteen-year-old African-American female. T. 75. Juror No. 3 was one of only two African-American women on the panel of eighteen prospective jurors. T. 74. The other African-American juror (Juror No. 13) was also struck by the prosecution but without

---

[2] Respondent claims that various aspects of Skervin's Batson and prosecutorial misconduct claims are unexhausted because Skervin failed to raise the Batson claim with sufficient specificity in his leave application to the New York Court of Appeals and never raised the prosecutorial misconduct claim to the state courts in any proceeding. 28 U.S.C. § 2254(b)(1)(A) & (c); Picard v. Connor, 404 U.S. 270, 275 (1971); Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001). Given the disposition of those claims on their merits recommended herein, however, respondent's exhaustion arguments need not be addressed.

3

objection by Skervin's counsel due to her relationship with a close associate of Skervin's trial counsel. T. 74–75.

Skervin's trial counsel stated at the time of the exercise of the peremptory challenge against Juror No. 3 that "I want to make a challenge to number 3 at the Court's convenience." T. 74. The trial court immediately asked the prosecutor "to articulate the reason for her excusing of juror number 3." T. 75. The prosecutor responded that she struck Juror No. 3 because she was "so young and d[id] not appear to be as mature as [the prosecutor would have] like[ed] . . . to weigh the gravity of the facts in this case." T. 75. The prosecutor based her conclusion on the fact that Juror No. 3 "appears to be 19 years old" and indicated that "her hobby is shopping." T. 75. The prosecutor also reiterated that she relied on the same grounds in striking Juror No. 4, a white female, who "indicated the same kind of responses" and appeared to be "older and somewhat more serious." T. 75. Skervin's counsel declined to be heard any further, requesting "only that I can continue with my challenge" to the striking of Juror No. 3. T. 75. The trial court denied Skervin's challenge. T. 75–76.

Skervin contends that the trial court erred in denying his Batson challenge. Batson established a three-step burden-shifting test for determining whether a prosecutor's use of a peremptory challenge was motivated by intentional discrimination. Id. First, the defendant must establish a prima facie case sufficient to raise the inference of intentional discrimination. Id. at 94. If a defendant meets this initial burden, the prosecution must articulate a race-neutral reason for the use of the peremptory challenge. Id. at 97. At this step, "the issue is the facial validity of the prosecutor's explanation [and] does not demand an explanation that is persuasive, or even plausible." Purkett v. Elem, 514 U.S. 765,

4

767–68 (1995). Finally, the burden then returns to the defendant to establish and persuade the court that the prosecution's assertion is mere pretext for racial discrimination. Id. at 92. The trial court must determine whether the defendant has proven intentional discrimination. Hernandez, 500 U.S. at 359. Moreover, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from," the defendant. Purkett, 514 U.S. at 768.

Here, the sufficiency of Skervin's prima facie case is not denied. Once a prosecutor offers a race-neutral explanation for the use of a peremptory challenge and the trial court proceeds to its step three determination, "the preliminary issue of whether the defendant had made a prima facie showing becomes moot." United States v. Hernandez, 500 U.S. 352, 359 (1991). In raising the objection, Skervin's counsel indicated only that he "would like to make a challenge" to the prosecutor's use of a peremptory challenge against Juror No. 3 before the trial court proceeded to step two and questioned the prosecution about its reason for the challenge. T. 74–75. The trial court never considered the first step under Batson and, therefore, the sufficiency of Skervin's prima facie case is moot.

Next, the prosecution met its burden under step two. The prosecution cited the youth and apparent immaturity of Juror No. 3. T. 74. Because "a discriminatory intent [was not] inherent in the prosecutor's explanation," this assertion sufficed to meet the prosecution's burden of production. Id. at 768.

Skervin's claim ultimately fails because he did not meet his burden at step three. Other than conclusory assertions, Skervin points neither to the record nor his submitted pleadings to impeach sufficiently the credibility of the prosecution's articulated race-neutral

reasons. Therefore, Skervin failed to meet both of the burdens of production and persuasion at steps two and three.

Moreover, the appellate Division considered and rejected Skervin's Batson claim. Thus, this Court may only disturb that holding "if it was unreasonable to credit the prosecutor's race-neutral explanation." Rice v. Collins, 546 U.S. 333, 338 (2006) (quoting 28 U.S.C. § 2254(d)(2) (limiting federal habeas review to cases where prosecutors' explanations are unreasonable because "[s]tate court factual findings . . . are presumed correct . . . [unless] rebutt[ed] . . . by 'clear and convincing evidence.'"). The Appellate Division did not act unreasonably in finding that, based on the facts and circumstances established by the record, there was no reason to question the trial court's determination as to the credibility of the prosecution's race-neutral explanation. The prosecutor asserted the same reasoning for striking a white juror who was in fact older than Juror No. 3. T. 74–75. Additionally, Skervin did not object when the prosecutor struck Juror No. 13, the other African-American woman among the eighteen prospective jurors. T. 74. As the Appellate Division found, after the prosecution asserted its explanation, Skervin "failed to further respond" and, therefore, "did not meet his ultimate burden of showing that the reasons given were merely a pretext of intentional discrimination." People v. Skervin, 13 A.D.3d at 662. Thus, there is no basis to question the reasonableness of the Appellate Division's determination of the facts in light of the evidence established by the record.

Accordingly, Skervin's petition on this ground should be denied.

### 3. Ineffective Assistance of Counsel

Next, Skervin contends that he was denied the effective assistance of counsel because (a) his appellate counsel failed adequately to raise on appeal trial counsel's alleged failure to insure a complete record demonstrating that the prosecution's peremptory challenge of Juror No. 3 was pretextual, and (b) appellate counsel failed to raise "significant and obvious issues" on appeal.

To establish ineffective assistance of counsel, a petitioner must satisfy a two-prong test: (1) counsel's performance was deficient, and (2) the deficiency prejudiced the petitioner's defense. See United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668 (1984)).  To satisfy the first prong, a court must ask "whether the defense counsel's actions were objectively reasonable considering all the circumstances." Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000).  This inquiry requires a court to be "highly deferential" to counsel's performance. Strickland, 466 U.S. at 689.  Moreover, there is a strong presumption that counsel's conduct at trial was reasonable and that any challenged conduct might be considered sound trial strategy. Kieser v. New York, 56 F.3d 16, 18 (2d Cir. 1995) (internal quotation marks omitted); see also Maddox v. Lord, 818 F.2d 1058, 1061 (2d Cir. 1987).  To satisfy the second prong, a court must determine whether there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different. McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

## A. Trial Counsel

Skervin's first ineffective assistance of appellate counsel claim is premised on the assertion that trial counsel's performance was defective since trial counsel failed to insure a complete record demonstrating why the prosecution's peremptory challenge to Juror No. 3 was discriminatory. This assertion is meritless as discussed above in subsection II(2). Trial counsel objected on-the-record to the prosecution's peremptory challenge to Juror No. 3, which caused the trial court to compel the prosecution to offer on-the-record a nondiscriminatory basis for its challenge. The prosecution's explanation passed constitutional muster under Batson and was supported by the juror's responses during voir dire. Trial counsel could do no more to preserve the record.

Moreover, a review of the record indicates that Skervin's trial counsel properly represented him. Counsel filed an omnibus pre-trial motion, A. 4–5,[3] and vigorously cross-examined the prosecution's witnesses at the suppression hearing. S. 7–10, 17–41, 45–54, 57–62.[4] At trial, counsel delivered persuasive opening and closing arguments, T. 105–22, 708–51, offered a defense case where three witnesses were called, T. 658–88, and moved to dismiss the indictment for the prosecution's failure to prove a prima facie case. T. 656–57. Additionally, trial counsel made numerous objections to the prosecutor's summation, some of which were sustained. T. 758, 766–67. At sentencing,

---

[3] "A" followed by a number refers to the pages of the arraignment transcript. Docket No. 15.

[4] "S" followed by a number refers to the pages of the suppression hearing transcript. Docket No. 15.

trial counsel moved to set aside the jury's verdict. ST. 6–7.[5] It cannot be said, then, that trial counsel's performance was unreasonable or prejudicial in this instance.

### B. Appellate Counsel

Skervin contends that appellate counsel should have asserted trial counsel's performance as error on direct appeal. As previously discussed, this is a meritless contention because Skervin's trial counsel zealously represented Skervin at trial. Appellate counsel was not constitutionally ineffective for failing to raise trial counsel's handling of the Batson issue on appeal. See Torres v. McGrath, 407 F. Supp. 2d 551, 562 (S.D.N.Y. 2006) ("'Failure to make a meritless argument does not amount to ineffective assistance.'") (quoting United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999)). Finally, Skervin makes no showing that appellate counsel's failure to attack trial counsel's performance prejudiced his appellate proceedings or that the outcome would have been any different.

Skervin also contends that appellate counsel provided ineffective assistance by failing to raise "significant and obvious issues." Pet. (Docket No. 1) at 4. Regardless of appellate counsel's performance, Skervin has offered nothing to support this claim. In his petition, Skervin's claim consists of only three conclusory sentences that contain no legal authority or facts of any kind. He asserts only that "[a] detailed discussion on this issue will follow, in the near future, in petitioner's memorandum of law." Pet. at 4. To date, Skervin has not filed a memorandum. Because Skervin failed to offer any information or

---

[5]"ST" followed by a number refers to the pages of the transcript of Skervin's sentencing. Docket No. 15.

authority, this claim should be deemed abandoned.  See King v. Greene, No. 03-CV-3743 (NG), 2006 WL 1764379, at *1 n.1 (S.D.N.Y. June 26, 2006).[6]

Therefore, the petition on this ground should be denied.

### 4. Prosecutorial Misconduct

Finally, Skervin contends that the prosecution made an improper comment during its summation that rendered the trial unfair and denied him due process.[7]

The Due Process Clause of the Fourteenth Amendment guarantees defendants the right to a fair trial.  U.S. Const. amend. XIV, § 1.  Prosecutorial misconduct violates due process when it is so severe and of sufficient significance to infect the proceedings "result[ing] in the denial of the defendant's right to a fair trial."  Greer v. Miller, 483 U.S. 756, 765 (1987) (citing United States v. Bagley, 473 U.S. 667, 676 (1985) (citations omitted)); Blissett v. Lefevre, 924 F.2d 434, 440 (2d Cir. 1991).  In considering a claim of prosecutorial misconduct, the alleged misconduct must be placed into context and

---

[6]Even if Skervin had adequately presented this claim, it would be without merit. Skervin asserted that "appellate counsel opted to raise weaker issues when there existed obvious and significant ones that had a better likelihood of success on appeal."  Pet. at 4. Even in a general sense, this allegation does not amount to ineffective assistance of counsel.  Counsel is not constitutionally required to raise every nonfrivolous claim, even when pressed to do so by a defendant, "if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Strickland, 466 U.S. at 688 (stating that a reviewing court must be "highly deferential" to counsel's tactical decisions and performance).  Appellate counsel filed a nine-page brief, raising Skervin's Batson claim to the Appellate Division.  Docket No. 13, Ex. C.  Albeit unrelated to trial counsel's performance, appellate counsel's arguments were clear, intelligent, and supported by appropriate legal authority.

[7]The prosecutor stated, "And I ask you, as the system has protected Rohan Skervin's rights, that you protect Milton Sutherland's rights as well."  T. 787.

10

evaluated based upon its severity, the curative measures taken, and the likelihood of conviction absent its occurrence.  See Blissett, 924 F.2d at 440.  The more "pervasive" and "persistent" the misconduct, the greater the probability that the misconduct prejudiced a petitioner and denied him or her a "fundamentally fair trial."  Id. at 441.

First, even assuming the prosecutor's remark was improper, when considered in context, it did not rise to a level of severity sufficient to render Skervin's trial unfair.  The remark was a single sentence in a lengthy summation.  T. 752–88.  It was a common entreaty to the jury to vindicate the victim.  A prosecutor urging a jury to protect the rights of the victim, as a device of persuasion, does not rendered a trial unfair.  See Pullman v. Phillips, No. 02-CV-5773 (JBW), 2003 WL 22952849, at *3 (E.D.N.Y. Sept. 26, 2003) (dismissing habeas petitioner's prosecutorial misconduct claim where the prosecutor "urged the jury to give the victims, who could not speak for themselves, justice" because the claim did not render the trial unfair "even assuming they were improper").

Second, the prosecutor's remark was unlikely to prejudice Skervin due to the trial judge's jury instructions.  The trial judge repeatedly instructed the jury that they were the sole judges of the facts and that it was for them to accept or reject the summation arguments based on their own analysis of the facts, inferences, and conclusions to be drawn from the facts.  T. 84, 85, 88, 794, 797.  In light of the judge's clear and repeated jury instructions, the prosecutor's single remark likely did not render Skervin's trial unfair.

Third, there is substantial certainty that the likelihood of Skervin being convicted in the absence of the remark would have remained the same.  The circumstantial evidence against petitioner was overwhelming.  Skervin admitted to a friend that he had killed Sutherland, T. 348–51; Skervin was seen leaving Sutherland's apartment carrying a gun,

11

T. 273–74; and Skervin admitted to the police that he was in the victim's apartment on the morning of the shooting. T. 608–14. In light of this evidence, the prosecution's statement was unlikely to have any influence on the jury's verdict.

Therefore, the petition on this ground should be denied.

### III. Conclusion

For the reasons stated above, the Court recommends that Skervin's petition for a writ of habeas corpus be **DENIED**. Furthermore, the Court finds that Skervin has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, the Court further recommends that no certificate of appealability should issue with respect to any of Skervin's claims.

**ANY OBJECTIONS** to this Report and Recommendation must the filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), and Local Rule 72.3(a)(3). **Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order**.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: October 29, 2008
       Albany, New York

_____
David R. Homer
U.S. Magistrate Judge